UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAWRENCE PETERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:13-cv-00466-RLY-DML |
| | ) |
| BOLDMAN Lieutenant, CONLON Officer, | ) |
| JODI MURPHY RN Nurse, | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motions for Summary Judgment**

Plaintiff Lawrence Peterson, a former Indiana prisoner, filed this civil action alleging that certain prison workers were deliberately indifferent to his serious medical needs and as a result delayed his access to medical treatment over the course of three days in 2012. The defendants, Lt. James Boldman, Sergeant Cory Conlon, and Nurse Jodi Murphy, seek resolution of this action through summary judgment.

For the reasons explained below, defendant Murphy's motion for summary judgment [dkt. 60] and defendants Conlon and Boldman's motion for summary judgment [dkt. 70] are **granted.**

**I. Standard of Review**

A motion for summary judgment asks that the court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is

1

a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The key inquiry is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330. In compiling the facts set forth below, the court considered those portions of Peterson's declaration [dkt. 76] and the complaint [dkt. 1] which comply with Rule 56(c)(4) of the *Federal Rules of Civil Procedure*. That is, those statements which were made on personal knowledge, set out facts that would be admissible in evidence, and showed that he is competent to testify on the matters asserted were considered. Legal conclusions and facts based on speculation or hearsay were disregarded.

## II. Material Facts

Applying the standards set forth above, the undisputed material facts are as follows:

**A. Background**

At all times relevant to this action, Peterson was incarcerated at J cell house of Pendleton Correctional Facility ("PCF"). Lieutenant James Boldman and Correctional Sergeant Cory Conlon were both assigned to J cell house at PCF. Jodie Murphy provided nursing services at PCF.

While incarcerated, Peterson had been diagnosed as suffering from chronic problems of viral hepatitis C, asthma, hypertension and diabetes mellitus.

**B. June 4, 2012**

On June 4, 2012, at or about 8:00 a.m., Peterson was taken by other inmates to Sgt. Conlon's office. Peterson told Conlon that he could hardly walk and was having bad chest pains and difficulty breathing. Conlon directed the other inmates to take Peterson back to his cell and stated that he was going to call medical. Conlon then called the infirmary. Conlon testified that he did not receive an answer. Peterson testified that around 8:30 a.m. Conlon told Peterson that medical stated that they did not want to see him.

At 12:30 p.m. offender Robinson encouraged Peterson to tell Lt. Boldman about his medical problems. Peterson was helped to Boldman's office and reported that he was having chest pains and difficulty breathing and walking. He stated that he needed to see medical. Conlon then told Boldman something and Boldman stated that medical did not want to see Peterson and that Sgt. Conlon had already told Peterson that.

At 1:00 p.m. Conlon asked Nurse Stacie Hoover to check on Peterson during his routine diabetic check. Peterson told Nurse Hoover what his problems entailed. Nurse Hoover does not specifically remember this encounter, but she testified that it would not be unusual for an inmate to tell her of a medical concern while she was monitoring diabetic patients' blood sugar and determining whether to offer insulin. Nurse Hoover testified that if the inmate was in obvious, serious distress she would have arranged for him to be transported to the infirmary for immediate treatment. If the inmate was not in obvious, serious distress she would have advised the inmate to fill out a healthcare request form, which is the normal protocol for infirmary visits. The housing unit log book reflects that Peterson was advised by the nurse to fill out a healthcare request form.

Peterson cannot recall if he repeated his medical concerns on June 4, 2012, to the next shift of correctional officers on duty.

3

**C. June 5, 2012**

On June 5, 2012, at around 11:00 a.m., Peterson was seen for an unscheduled nurse visit by Mary Blomquist, R.N. for complaints of shortness of breath and wheezing. During that visit, Peterson's oxygen saturation level was measured at 94%. Blomquist recommended a physician be contacted for treatment and for further orders relating to Peterson's breathing problems. Also on June 5, 2012, a physician was contacted and Peterson was prescribed nebulizer treatments and a prescription for prednisone to relieve his symptoms of shortness of breath and wheezing.

Peterson was seen again on June 5th by medical personnel at approximately 10:00 p.m. Although defendant Nurse Jodi Murphy did not examine Peterson, she recalls him being present in the facility clinic on June 5, 2012.

**D. June 6, 2012**

On June 6, 2012, at around 2:30 a.m., Peterson was seen by Alana Brown, R.N. at an unscheduled nurse visit for shortness of breath and constant cough. His oxygen saturation level was evaluated at 80% on room air and showed minimal improvement to 85% after treatment with albuterol nebulizer treatment. Peterson was immediately referred to a physician for further evaluation.

Peterson then went into Nurse Murphy's office for routine diabetic treatment at around 3:00 a.m. Nurse Murphy reportedly stated that nothing was wrong with Peterson and refused to check his vitals. Nurse Murphy did check Peterson's oxygen saturation level. Nurse Murphy then sent Peterson back to his housing unit.

Peterson was issued a pass to return to medical at 8:00 a.m. At 8:15 a.m. Dr. Wolfe, Peterson's treating physician, recommended that Peterson be transferred to St. John's Hospital for

4

evaluation of his breathing problems as his physical exam revealed wheezing, abnormal breathing sounds, and lungs not clear to auscultation.

On the same day, June 6, 2012, Peterson was admitted to St. John's Hospital with complaints of cough, shortness of breath, and wheezing and was found to have a right upper lobe infiltrate consistent with pneumonia. He was treated with antibiotics and was placed on steroids for chronic obstructive pulmonary disease exacerbation. He was also treated for asthma exacerbation. Peterson continued to improve and was discharged on June 11, 2012, with a discharge diagnosis of pneumonia, diabetes, asthma exacerbation, and gastroesophageal reflux disease. He was not wheezing at time of discharge and his dyspnea had resolved.

### III. Discussion

Each defendant argues that he or she is entitled to summary judgment in his or her favor because Peterson's injuries did not constitute a serious medical need and because there is no evidence that he or she was deliberately indifferent to Peterson's medical needs. Peterson disputes the defendants' conclusions.

#### A. Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment; that guarantee encompasses a prisoner's right to medical care. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Prison officials may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623–24 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009), or by persisting with inappropriate treatment, *Gonzalez v. Feinerman*, 663 F.3d 311, 314

(7th Cir.2011); *Greeno v. Daley*, 414 F.3d 645, 653–54 (7th Cir. 2005). Prison officials might also show their deliberate indifference by delaying necessary treatment and thus aggravating the injury or needlessly prolonging an inmate's pain. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). It is well-settled, however, that while incarcerated, an inmate is not entitled to the best possible care or to receive particular treatment of his choice. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Negligence, even gross negligence, is insufficient to establish deliberate indifference under the Eighth Amendment. See *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) *Mathis v. Fairman*, 120 F.3d 88, 92 (7th Cir. 1997); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

A claim based on deficient medical care must demonstrate two requirements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition. This is because deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837 (construing *Estelle*).

### B. Serious Medical Need

For the objective element, the prisoner's medical condition must be one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). While a "serious medical need" encompasses medical conditions less critical than life threatening, not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Id.* at 1370-72.

The defendants assert that they are entitled to summary judgment because Peterson's medical condition was not sufficiently serious.

Taking the facts in the light most favorable to Peterson as the non-moving party, however, Peterson's injuries were sufficiently serious. This determination is supported by the fact that Peterson was suffering from chest pains and shortness of breath and was ultimately hospitalized for pneumonia, chronic obstructive pulmonary disease exacerbation, and asthma exacerbation.

**C. Deliberate Indifference**

Next, the defendants argue that even if Peterson's medical conditions were sufficiently serious, they were not deliberately indifferent to his medical needs. To satisfy the subjective component, a prisoner must demonstrate that the defendant officials had a sufficiently culpable state of mind—that their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference" to his serious medical needs. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). In particular:

> The officials must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. *Walker* [*v. Benjamin*], 293 F.3d [1030] at 1037 [(7th Cir. 2002)]. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk.

*Townsend v. Cooper,* 759 F.3d 678, 689 (7th Cir. 2014) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

Unfortunately for Peterson, his Eighth Amendment claims fail at this step in the analysis. This result is the necessary consequence of the following facts. During the three day time period at issue, Peterson was seen by a host of medical providers who are not defendants in this action.

7

He was evaluated by medical professionals on June 4, 5, and 6th. He received breathing treatments on both June 5th and 6th. When the breathing treatment on June 6th was not effective, Peterson was taken to the hospital that morning. There is no dispute that Peterson received treatment for his medical condition and for the reasons explained below there is simply insufficient evidence upon which any reasonable trier of fact could conclude that any of the named defendants were deliberately indifferent to Peterson's serious medical needs.

**1. Nurse Murphy**

Peterson tries to create a material fact in dispute by arguing that the issue is what Nurse Murphy failed to do on June 6, 2012, at 2:30 a.m. But Peterson fails to provide any admissible evidence which calls into question Nurse Murphy's testimony or which contradicts the medical records that reflect that immediately prior to seeing Murphy, Peterson was evaluated by Alana Brown, R.N. at an unscheduled nurse visit for shortness of breath and constant cough. His oxygen saturation level was evaluated at 80% on room air and showed minimal improvement to 85% after treatment with albuterol nebulizer treatment. Peterson was immediately referred to a physician for further evaluation.

At the very most, Nurse Murphy could be held responsible for a five and a half-hour delay in transporting Peterson to the hospital. There is no evidence, however, that Nurse Murphy was responsible for this delay in transferring Peterson to the hospital, that the delay injured Peterson or otherwise affected his medical outcome, or that any delay was a result of Murphy's deliberate indifference. Nurse Murphy cannot be found deliberately indifferent because when she saw Peterson for his insulin, he had already been seen by another nurse and referred to a doctor. Peterson suggests that Murphy is responsible for his heart failure brought on by pneumonia, but

8

there is no evidence to support this claim. *See Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013) (*citing Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007), "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental" (citations omitted)).

### 2. Lt. Boldman and Sgt. Conlon

Defendants Boldman and Conlon argue that because Peterson was seen regularly by medical personnel and received proper care and treatment they are entitled to summary judgment in their favor. The record indicates that 8:00 a.m. on June 4, 2012, Peterson told Conlon about his medical problems. Conlon contacted medical but either there was no answer or he was told that the medical staff did not want to see Peterson. Conlon then ensured that Peterson was seen by Nurse Hoover, the diabetic nurse, between 1:00 and 1:45 p.m. If the Nurse, a medical professional, had cause to believe Peterson had a serious enough medical problem to warrant more immediate medical attention at that time then she would have arranged for him to be transported to the infirmary for immediate treatment. Because Peterson was seen by medical personnel who determined that Peterson was not in serious medical distress requiring immediate medical treatment, it was reasonable for Conlon and Boldman to determine that further action on their part was not necessary at that time.

Peterson argues that because he was suffering chest pains, Conlon or Boldman should have called a signal 3000 over his radio. There is no evidence, however, that such a call was appropriate under the circumstances. First, the nurse could have called for medical attention if she thought it

9

was necessary. Second, a signal 3000 is called for only the most serious medical emergencies, such as suicide attempts and/or unresponsive inmates. Further, Peterson does not remember whether he raised his concerns regarding his need for immediate medical treatment with the next shift of custodial staff.

Offender Peterson did go to the infirmary the following day and received a nebulizer treatment. He was not hospitalized at that time. The following morning, after receiving a second nebulizer treatment, Offender Peterson was not better and was transported to the hospital. Neither the nurse who saw him on June 4th nor the nurses who saw him on June 5th thought his condition was serious enough to warrant hospitalization. Under these circumstances, the custodial defendants, Conlon and Boldman, were not deliberately indifferent to Peterson's medical needs. It was reasonable for these defendants who are not medical professionals to rely on the opinion of medical professionals, including Nurse Hoover. *See Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir. 2008)("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one.").

Because there is no evidence that Officer Conlon or Lt. Boldman were deliberately indifferent to Peterson's serious medical needs, they are entitled to judgment as a matter of law in their favor. Although the defendants also argue that they are entitled to qualified immunity, these arguments are unnecessary because there was no constitutional violation and the qualified immunity defense is irrelevant. *See Mucha v. Vill. of Oak Brook,* 650 F.3d 1053, 1057–58 (7th Cir. 2011).

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983). Peterson has not identified a genuine issue of material fact as to his claims against defendants Boldman, Conlon and Murphy and these defendants are entitled to judgment as a matter of law. The motions for summary judgment [dkts. 60 and 70] are **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 02/27/2015

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

LAWRENCE PETERSON
5526 East 21st Street
Indianapolis, IN 46218

All Electronically Registered Counsel